Jon T. Neumann (SBN 018858)
Adrianna Griego Gorton (SBN 031836)
**GREENBERG TRAURIG, LLP**
2375 East Camelback Road, Suite 800
Phoenix, AZ 85016
Telephone: (602) 445-8000
neumannj@gtlaw.com
gortona@gtlaw.com

Grant A. Geyerman (*pro hac vice* application forthcoming)
Kathryn E. Hoover (*pro hac vice* application forthcoming)
Joseph Sandoval-Bushur (*pro hac vice* application forthcoming)
Ayoub Ouederni (*pro hac vice* application forthcoming)
**WILLIAMS & CONNOLLY LLP**
680 Maine Avenue SW
Washington, DC 20024
Telephone: (202) 434-5000
ggeyerman@wc.com
khoover@wc.com
jsandoval-bushur@wc.com
aouederni@wc.com

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Caremark, L.L.C. and CaremarkPCS, L.L.C., <br><br>Plaintiffs, <br><br>v. <br><br>Protecting Access to Retail Pharmacy LLC *a/k/a* TRUST LLC, <br><br>Defendant. | No. _____ <br><br><br>**COMPLAINT** |

Plaintiffs Caremark, L.L.C. and CaremarkPCS, L.L.C. (together, "Caremark") file this Complaint for a declaratory judgment and injunctive relief against Protecting Access to Retail Pharmacy LLC a/k/a TRUST LLC ("TRUST LLC"). Caremark alleges as follows:

710603875

GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

# INTRODUCTION

1. Caremark is a pharmacy benefit manager ("PBM") for numerous health insurers. Caremark creates networks of pharmacies in which health insurers' beneficiaries may fill their prescriptions for medications. Caremark contracts individually (that is, on a one-to-one basis) with pharmacies or pharmacy chains that want to participate in its networks.

2. Through a purported "Notice of Dispute" letter and subsequent correspondence sent to Caremark, TRUST LLC contends that the owners of approximately 4,000 pharmacies have "assigned their claims" against Caremark to TRUST LLC. Ex. A at 1.[1] TRUST LLC has announced publicly that it intends to initiate arbitration against Caremark to assert the claims those pharmacies purportedly assigned it. *See id.*; *see also* National Community Pharmacists Association ("NCPA"), *TRUST LLC to File Notice of Arbitration Claims Against CVS Caremark Representing over 3,000 Locations* (Feb. 24, 2025), https://ncpa.org/newsroom/qam/2025/02/24/trust-llc-file-notice-arbitration-claims-against-cvs-caremark-representing (last accessed May 5, 2025).

3. This suit is not about the merits of any legal claims that these pharmacies may have against Caremark. Instead, through this action, Caremark seeks to prevent TRUST LLC from impermissibly attempting to assert the pharmacies' claims—claims that TRUST LLC has no valid right to assert.

4. An assignment is invalid when it materially changes the original contracting parties' bargain. The purported assignments here are invalid for this reason because they would materially change the bargain that Caremark struck with pharmacies to resolve disputes on a one-to-one, Caremark-to-pharmacy basis.

5. If TRUST LLC's purported assignments were effective, Caremark could be forced to resolve disputes with a stranger, and not with each pharmacy with which it has a contractual relationship, as it has bargained for. Caremark's contracts include a number of provisions specifically designed to prevent such an outcome. For example, the contracts

---

[1] For ease of reference, this Complaint refers to "pharmacy locations" as "pharmacies."

2

expressly prohibit assignment and require that all disputes be pursued and resolved between an individual pharmacy and Caremark.

6. Indeed, the intended effect of TRUST LLC's purported assignments is to upend the Caremark-to-individual pharmacy dispute resolution process to which Caremark and the pharmacies agreed. TRUST LLC intends for these purported assignments to allow for "[p]ooling" of pharmacy claims so that "TRUST LLC [can] potentially speak with one voice for community pharmacies against the PBM-insurers." *See* NCPA, *New LLC Helps Patients Stay Connected to Affordable Medicine and Prescription Care* (Oct. 15, 2023), https://ncpa.org/newsroom/qam/2023/10/15/new-llc-helps-patients-stay-connected-affordable-medicine-and-prescription (last accessed May 5, 2025). In other words, the purpose of TRUST LLC's purported assignment scheme is to deprive Caremark of the benefit of its bargained-for agreements with the pharmacies in its networks to resolve disputes on a bilateral, individual basis, and instead force Caremark to resolve disputes with TRUST LLC, a stranger entity. Under black-letter contract law, such assignments are invalid and unenforceable.

7. Accordingly, Caremark seeks a declaration under the Declaratory Judgment Act that TRUST LLC's purported assignments from the pharmacies are void, invalid, and unenforceable. Caremark also seeks injunctive relief enjoining TRUST LLC from (i) asserting any purported rights against Caremark under, or attempting to enforce, its purported assignments; (ii) initiating arbitration against Caremark on the basis of its purported assignments; and (iii) soliciting, accepting, or asserting any additional assignments of rights against Caremark from pharmacies.

**THE PARTIES**

8. Plaintiff Caremark, L.L.C. is a California limited liability company. Its sole member is Caremark Rx, L.L.C., a Delaware limited liability company. Caremark Rx, L.L.C.'s sole member is CVS Pharmacy, Inc., a Rhode Island corporation with its principal place of business at 1 CVS Drive, Woonsocket, Rhode Island 02895.

9. Plaintiff CaremarkPCS, L.L.C. is a Delaware limited liability company. Its sole member is Caremark Rx, L.L.C., a Delaware limited liability company. Caremark Rx, L.L.C.'s sole member is CVS Pharmacy, Inc., a Rhode Island corporation with its principal place of business at 1 CVS Drive, Woonsocket, Rhode Island 02895.

10. The Caremark entities administer and maintain their contracts with pharmacies in Arizona, Caremark's business "hub."

11. Defendant TRUST LLC is a Virginia limited liability company. Its sole member is the National Community Pharmacists Association ("NCPA"), a Virginia corporation with its principal place of business at 100 Daingerfield Road, Alexandria, Virginia 22314.

## JURISDICTION AND VENUE

12. The Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship and the amount in controversy exceeds $75,000. The relief Caremark seeks exceeds $75,000 in value both because that relief will avoid more than $75,000 in arbitration expenses and because TRUST LLC would seek to recover more than $75,000 in damages against Caremark based on its purported assignments.

13. The Court has personal jurisdiction over TRUST LLC because the claims TRUST LLC intends to assert against Caremark arise out of contracts with a significant nexus to Arizona. The contracts were negotiated and executed, in part, in Arizona and contemplated an ongoing business relationship between Caremark and pharmacies in which significant contractual performance would occur in Arizona through personnel and offices of Caremark located in Arizona. Additionally, the Court has personal jurisdiction over TRUST LLC because TRUST LLC received assignments of rights governed by Arizona law and, upon information and belief, intends to initiate arbitration in Arizona.

14. Venue is proper in this district under 28 U.S.C. § 1391(b)(1) and (2). Pursuant to 28 U.S.C. § 1391(c)(2), TRUST LLC resides in this district. Moreover, a substantial part of the events or omissions giving rise to Caremark's claim occurred in this district because (i) upon information and belief, this is the district in which TRUST LLC

4

710603875

intends to initiate an arbitration asserting its purportedly assigned rights, and (ii) this dispute relates to contracts that Caremark administers and maintains in Arizona, Caremark's business "hub."

## FACTUAL BACKGROUND

### A. Caremark's Contracts with Pharmacies

15. Caremark is a PBM for health insurers and health plans throughout the country, including commercial plans, Medicare Part D plans, and Medicaid plans. Caremark administers prescription drug benefits for health plans' members and processes and remits payment for prescription-drug claims submitted by pharmacies. To facilitate these functions, Caremark creates pharmacy networks—groups of pharmacies that agree to dispense prescription drugs to health plans' members in exchange for payment.

16. Caremark contracts with individual pharmacies that wish to participate in its pharmacy networks. Those individual pharmacies sign individual contracts, called provider agreements. Through the provider agreements, the pharmacies agree to be bound by the terms of the Caremark Provider Manual. Each individual pharmacy is referred to as the "provider" in these contractual documents. As relevant to this particular action, the Provider Manual and the individual provider agreements are the same in all relevant respects.

17. The Provider Manual contains an arbitration agreement requiring Caremark and each pharmacy to resolve disputes through arbitration. *See* Ex. B § 15.09. Importantly, the arbitration agreement includes an "Anti-Class; Anti-Consolidation of Claims in Arbitration" provision requiring bilateral arbitration. In relevant part, the section states:

> No dispute between Provider and Caremark may be pursued or resolved as part of a class action . . . or other representative action or proceeding (hereafter all included in the term "Class Action"). All disputes are subject to arbitration on an individual basis, not on a class or representative basis, or through any form of consolidated proceedings, and the arbitrator(s) will not resolve Class Action disputes and will not consolidate arbitration proceedings without the express written permission of all parties to the Provider Agreement. Provider and Caremark agree that each may pursue or resolve a dispute against the other only in its individual capacity, and not as

GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

a plaintiff or class member in any purported Class Action. Further, disputes with a Provider are limited to a single NCPDP number per arbitration. A Provider may not consolidate or aggregate the claims of multiple NCPDP numbers into a single arbitration.

*Id.* § 15.09.03. (An "NCPDP number" is a unique identification number assigned by the National Council for Prescription Drug Programs to an individual pharmacy location to assist pharmacies in their dealings with payors and PBMs.)

18. These dispute resolution terms are essential to Caremark's agreement with its contracted pharmacies because, *inter alia*, (i) arbitration with an individual pharmacy generally is less expensive, faster, and more efficient than class, representative, or consolidated proceedings, and more efficient than proceedings with third parties who did not themselves contract with Caremark; (ii) arbitration with an individual pharmacy presents fewer risks (including, for example, the risks of error or devastating loss, which can lead to undue settlement pressure) as compared to class, representative, or consolidated proceedings; (iii) resolving a dispute with an individual pharmacy presents fewer complications regarding the exchange of information that is confidential or otherwise subject to protection; and (iv) it is likely easier and more efficient to reach agreed resolution with an individual pharmacy that has an actual business relationship with Caremark than it is to reach such resolution with a third party or with pharmacies or counsel proceeding in a class, representative, or consolidated manner.

19. The Provider Manual also includes a provision that reads: "The expenses of arbitration, including reasonable attorney's fees, will be paid for by the party against whom the final award of the arbitrator(s) is rendered, except as otherwise required by Law." Ex. B § 15.09.02.

20. This "Expenses of Arbitration" provision is essential to Caremark's agreement with its contracted pharmacies because, *inter alia*, it discourages both Caremark and individual pharmacies from bringing frivolous claims against one another and it encourages both Caremark and individual pharmacies to seek expeditious resolution of any asserted claims.

21. The Provider Manual includes a section explicitly prohibiting assignment of the agreement "without the prior written consent of the other party." Ex. B § 15.01.

22. This anti-assignment provision is essential to Caremark's agreement with its contracted pharmacies because, *inter alia*, it preserves Caremark's ability to decide whether it wants to deal with a particular entity both in the ordinary course of business and for purposes of resolving any disputes that may arise between it and a pharmacy.

23. Caremark has never provided consent, written or otherwise, to any pharmacy allowing assignment to TRUST LLC. Nor did those pharmacies ever request consent, written or otherwise, to assign their rights to TRUST LLC.

24. Notwithstanding the anti-class and anti-consolidation provision and the anti-assignment provision of the Provider Manual, TRUST LLC intends to rely on the purported assignments to assert against Caremark approximately 4,000 pharmacies' claims relating to certain performance-based "fees."

**B.    TRUST LLC**

25. TRUST LLC was created by NCPA, a national trade association for community pharmacies that largely consists of independent pharmacies.

26. NCPA is frequently adverse to Caremark and other PBMs. NCPA engages in what it describes as "aggressive legal advocacy" against PBMs. NCPA, *Litigation—The Third Pillar* (Jan. 24, 2025), https://ncpa.org/newsroom/executive-update/2025/01/24/litigation-third-pillar-ncpa-executive-update-january-24-2025 (last accessed May 5, 2025). It also engages in extensive efforts to lobby state and federal lawmakers and agencies to increase regulation of PBMs. NCPA's goal through these efforts is to force Caremark and other PBMs to pay more money to independent pharmacies.

27. TRUST LLC is not NCPA's first attempt to undermine the "Anti-Class; Anti-Consolidation of Claims in Arbitration" section of Caremark's Provider Manual.

28. On September 26, 2023, an independent pharmacy, Osterhaus Pharmacy, Inc., filed a putative class action against Caremark and affiliated corporate entities relating

to certain performance-based "fees" assessed on pharmacies. *See Osterhaus Pharmacy Inc. v. CVS Health Corp.*, Case No. 23-cv-01500 (W.D. Wash. filed Sept. 26, 2023).[2] NCPA's connection to this putative class action has been made plain.

29. First, in a video posted to NCPA's YouTube channel on October 16, 2023, NCPA's general counsel stated that NCPA has "been trying to educate law firms about" claims against PBMs "over the last, you know, year or so." NCPA, *Legal Update* (Oct. 16, 2023), https://youtu.be/YQeMN11HJm8 (last accessed May 5, 2025). He stated that he told these law firms that they "should reach out to Matt [Osterhaus]"—the owner of Osterhaus Pharmacy, Inc. that brought the putative class action—"and they did." *Id.*

30. Then, approximately three weeks after the filing of the putative class action, NCPA announced the creation of TRUST LLC. NCPA touted that TRUST LLC had "retained the law firms of Berger Montague, Cohen & Gresser LLP, and Baker Donelson to lead the litigation" and that two of those firms—"Berger Montague and Cohen & Gresser"—"are the firms that filed the class-action lawsuit against CVS Health in federal court last month." NCPA, *NCPA Unveils an Opportunity to Fight Back Against DIR Fees* (Oct. 16, 2023), https://ncpa.org/newsroom/news-releases/2023/10/16/ncpa-unveils-opportunity-fight-back-against-dir-fees (last accessed May 5, 2025).

31. NCPA created TRUST LLC to "streamline the process for pharmacies to arbitrate their legal claims related to [performance-based] fees against the major PBMs," including Caremark. *See* NCPA, https://fightpbms.com (last accessed May 5, 2025).

32. TRUST LLC encourages pharmacies to assign to it their claims relating to these performance-based "fees," so that TRUST LLC can arbitrate those claims against Caremark and other PBMs. *See id.*; NCPA, *New LLC Helps Patients Stay Connected to Affordable Medicine and Prescription Care* (Oct. 15, 2023), https://ncpa.org/newsroom/qam/2023/10/15/new-llc-helps-patients-stay-connected-affordable-medicine-and-prescription (last accessed May 5, 2025). There are other

---

[2] CVS Health Corporation, a publicly traded holding company, is Caremark's ultimate parent company.

national PBMs, such as Express Scripts and OptumRx, that operated programs akin to Caremark's program involving performance-based "fees" that TRUST LLC would also seek to challenge.

33. TRUST LLC advertises to pharmacies that assignment will allow them to "take part in a large-scale, coordinated legal strategy" and "benefit from the strength in numbers." NCPA, https://fightpbms.com (last accessed May 5, 2025).

34. The *Osterhaus* putative class action was transferred from the Western District of Washington to the District of Arizona, and on February 12, 2025, a court in this district granted Caremark's motion to compel arbitration of Osterhaus Pharmacy's claims. *Osterhaus Pharmacy Inc. v. CVS Health Corp.*, No. CV-24-01539-PHX-JJT, 2025 WL 472731 (D. Ariz. Feb. 12, 2025). In granting the motion to compel arbitration, the court effectively ended the attempt by Osterhaus Pharmacy, NCPA, and their counsel to resolve their claims against Caremark on a class-wide basis in litigation, in contravention of the terms of the pharmacy-Caremark agreements.

**C.    TRUST LLC Notifies Caremark of Its Intention to Initiate Arbitration**

35. On February 25, 2025—just two weeks after a court in this district ordered that Osterhaus Pharmacy's claims must be resolved through arbitration, which would have to proceed on a bilateral basis according to the terms of the Caremark Provider Manual's arbitration agreement, rather than through a class action—TRUST LLC sent Caremark a "Notice of Dispute" alleging that "the owners of approximately 3,000 pharmacies [*sic*] locations" have "assigned [it] their claims." Ex. A at 1. In later correspondence, TRUST LLC asserted that more than 4,000 pharmacies have assigned their claims to it.

36. TRUST LLC's "Notice of Dispute" alleges that the purportedly assigned claims are with respect to the same "fees" at issue in the *Osterhaus* putative class action. TRUST LLC intends to assert that these "fees" violated the terms of the Caremark Provider Manual.

37. The "Notice of Dispute" cites the CVS Caremark Provider Manual and further seeks, "pursuant to Section 15.9.07 of the CVS Caremark Provider Manual[,] . . . a

meeting of authorized representatives of the parties for the purpose of resolving the dispute." *Id.* Section 15.09.07 is the section of the Provider Manual dealing with dispute resolution procedures for claims between Caremark and its contracted pharmacies. Under that section, requesting such a meeting is the first step a party must take to initiate arbitration. *See* Ex. B § 15.09.07. By asserting that Caremark breached the terms of the Provider Manual and invoking the dispute resolution procedures of the Provider Manual, TRUST LLC concedes that the terms of the Provider Manual bind Caremark and the individual pharmacies that are parties to the Provider Manual.

38. TRUST LLC intends to initiate a single, consolidated arbitration against Caremark asserting the claims of the more than 4,000 pharmacies who purportedly assigned their claims to it. TRUST LLC intends to do so despite not being a party to the Provider Manual.

39. TRUST LLC's purported assignments are void, invalid, and unenforceable as a matter of law because they materially undermine Caremark's rights and are explicitly prohibited under the Provider Manual.

40. TRUST LLC has no valid contractual relationship with Caremark and no arbitration agreement exists between the two entities. Accordingly, TRUST LLC has no basis upon which to initiate arbitration against Caremark.

41. TRUST LLC's intended arbitration is an attempted end-run around the dispute resolution procedures agreed to between Caremark and the individual pharmacies, which explicitly and broadly proscribe "arbitration on . . . a class or representative basis, or through any form of consolidated proceedings." Ex. B § 15.09.03. As the arbitration agreement unequivocally states, "[a]ll disputes are subject to arbitration on an individual basis . . . [and] each [party] may pursue or resolve a dispute against the other only in its individual capacity." *Id.*

42. Were TRUST LLC permitted to proceed as it intends, it would frustrate the benefit of Caremark's bargain to have disputes between it and the pharmacies resolved on a Caremark-to-individual pharmacy basis in arbitration. It would effectively force

710603875

Caremark to resolve its disputes (or at least defend against resolving its disputes) with pharmacies in a class, representative, or consolidated manner, notwithstanding Caremark's deliberate bargain not to do so.

43. The merits of the pharmacies' claims against Caremark are not the subject of this lawsuit. As Caremark and the pharmacies have agreed, those claims must be resolved in accordance with the Provider Manual, in a bilateral arbitration between an individual pharmacy and Caremark. Rather, this action is solely about the propriety of TRUST LLC's assignments.

**CLAIM FOR RELIEF**

**Count I**
**28 U.S.C. §§ 2201, 2202**
**Declaration that the assignments are void, invalid, and unenforceable**

44. Caremark repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

45. Caremark's contract with each pharmacy includes a provision mandating that disputes between the parties be pursued and resolved on an individual, bilateral basis—and not on a class, representative, or consolidated basis. *See supra* ¶ 17; Ex. B § 15.09.03.

46. Caremark's contract with each pharmacy also includes a provision requiring that the expenses of arbitration, including reasonable attorney's fees, be paid by the party against whom an arbitral award is rendered. *See supra* ¶ 19; Ex. B § 15.09.02.

47. Caremark's contract with each pharmacy additionally includes a provision preventing assignment of the agreement "without the prior written consent of the other party." *See supra* ¶ 21; Ex. B § 15.01.

48. TRUST LLC purports to have received assignments from approximately 4,000 pharmacies. Caremark did not provide prior written consent to any pharmacies assigning rights to TRUST LLC.

49. These purported assignments to TRUST LLC, if effective, would materially alter the bargain Caremark and the pharmacies agreed to in their contracts, by, *inter alia*,

710603875

increasing the burden and risk imposed on Caremark, materially impairing Caremark's chance of obtaining return performance, and materially reducing the contracts' value to Caremark.

50. *First*, the purported assignments would materially increase the burden and risk imposed on Caremark. Caremark now needs to expend resources to address TRUST LLC's attempt to circumvent the provisions of Caremark's contracts requiring that disputes be resolved with *individual* contracted pharmacies. Caremark also now faces the increased burden and risk of responding to an attempt by TRUST LLC to arbitrate multiple pharmacies' claims in one substantially larger proceeding, instead of in bilateral arbitrations—something Caremark expressly contracted not to do since class, consolidated, and representative disputes present greater costs, burdens, and risks than do individual, bilateral arbitrations. Caremark also faces the increased burden and risk involved with the pharmacies sending TRUST LLC confidential or otherwise protected information regarding their business dealings with Caremark. Moreover, there are increased burdens and risks associated with resolving disputes with a third party with whom Caremark is unfamiliar, as opposed to with an individual pharmacy with whom Caremark has an actual, ongoing business relationship.

51. *Second*, the assignments materially impair Caremark's chance of obtaining return performance. In any dispute with TRUST LLC, Caremark will not receive the benefit of addressing the dispute with the specific pharmacy with whom Caremark contracted and has a business relationship. Moreover, if TRUST LLC attempts to proceed with a consolidated representative arbitration (as it has threatened), Caremark will not receive the benefit of a pharmacy raising its dispute with Caremark only in a bilateral arbitration. Further any arbitration with TRUST LLC decreases Caremark's chance of obtaining expenses in the event it prevails in any arbitration, *see* Ex. B § 15.09.02. Because TRUST LLC is, upon information and belief, a made-for-arbitration entity with few assets, Caremark's chance of recovering fully its expenses is impaired relative to proceeding

710603875

against actual individual pharmacies that are ongoing business operations with substantial assets.

52. *Third*, the assignments materially reduce the agreements' value to Caremark because they threaten the material contractual provisions, discussed above, that Caremark bargained for. *See supra* ¶¶ 17–22.

53. TRUST LLC's assignments are thus void, invalid, and unenforceable.

54. Caremark cannot be adequately compensated by money damages for the actions TRUST LLC has taken.

55. Caremark is entitled to both a declaratory judgment that those assignments are void, invalid, and unenforceable and an injunction enjoining TRUST LLC from soliciting, accepting, asserting, or receiving any additional assignments of rights against Caremark from pharmacies.

56. As the assignments are invalid, there is no arbitration agreement between Caremark and TRUST LLC. TRUST LLC nonetheless threatens to initiate arbitration against Caremark. Accordingly, Caremark is also entitled to an injunction enjoining TRUST LLC from initiating and prosecuting any arbitration against it.

## PRAYER FOR RELIEF

**WHEREFORE**, Caremark respectfully requests the Court to:

1. Enter a judgment declaring that TRUST LLC's assignments are void, invalid, and unenforceable;

2. Enter an injunction enjoining TRUST LLC from asserting rights under, or enforcing, its assignments;

3. Enter an injunction enjoining TRUST LLC from initiating and prosecuting any arbitration against Caremark on the basis of its assignments;

4. Enter an injunction enjoining TRUST LLC from soliciting, accepting, asserting, or receiving any additional assignments; and

5. Grant such other relief as the Court deems just and proper.

Dated this 5th day of May, 2025.    Respectfully submitted,

By: */s/ Jon T. Neumann*
Jon T. Neumann
**GREENBERG TRAURIG, LLP**
2375 East Camelback Road, Suite 800
Phoenix, AZ 85016
Telephone: (602) 445-8000
neumannj@gtlaw.com

Grant A. Geyerman (*pro hac vice* forthcoming)
Kathryn E. Hoover (*pro hac vice* forthcoming)
Joseph Sandoval-Bushur (*pro hac vice* forthcoming)
Ayoub Ouederni (*pro hac vice* forthcoming)
**WILLIAMS & CONNOLLY LLP**
680 Maine Avenue SW
Washington, DC 20024
Telephone: (202) 434-5000
ggeyerman@wc.com
khoover@wc.com
jsandoval-bushur@wc.com
aouederni@wc.com

*Attorneys for Plaintiffs*

14

710603875